```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

DANIELLE MCCLURE,

                      Plaintiff,              05-CV-0809-A(Sr)

      v.                                     **DECISION**
                                               **and ORDER**

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security

                      Defendant.

_____

### **INTRODUCTION**

Plaintiff Danielle McClure ("Plaintiff") brings this action pursuant to the Social Security Act ("The Act") § 216(I) and § 223, seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") benefits.[2] Specifically, Plaintiff alleges that the decision of Administrative Law Judge ("ALJ") David S. Antrobus denying her application for benefits was not supported by substantial evidence contained in the record and was contrary to applicable legal standards.

Plaintiff moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c)("Rule 12(c)"), seeking reversal of the

_____

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for his predecessor Commissioner JoAnne B. Barnhart as the proper defendant in this suit.

[2] This case was transferred to the undersigned by the Honorable Richard Arcara, Chief Judge, United States District Court for the Western District of New York by Order dated January 11, 2008.

Commissioner's ruling or, in the alternative, remand of the matter for a new hearing. The Commissioner cross-moves for judgment on the pleadings pursuant to Rule 12(c), on the grounds that ALJ Arthur's decision was supported by substantial evidence contained in the record and was based on the correct application of appropriate legal standards. For the reasons set forth below, I find that the decision of the Commissioner is supported by substantial evidence, and is in accordance with applicable law. I therefore grant the Commissioner's motion for judgment on the pleadings, and deny Plaintiff's motion for judgment on the pleadings.

## **BACKGROUND**

On April 22, 2003, Plaintiff, who was then 32 years old, filed an application for Supplemental Security Income (Tr. at 66-75). Plaintiff claimed an inability to work since April 15, 2000, due to mental impairment (Tr. at 67). Plaintiff's application was denied initially on June 27, 2003 (Tr. at 45-48), and she then filed a timely request for a hearing before an ALJ (Tr. at 49-52). Plaintiff appeared with Joann Lewandowski, a non-attorney, in an administrative hearing held by video teleconference before ALJ David Antrobus on November 10, 2004 in Richmond, NY (Tr. at 25-43).

In a decision dated April 26, 2005, ALJ Antrobus found that although Plaintiff's mental impairments were severe, that the

Plaintiff was not disabled within the meaning of the Social Security Act ("the Act")(Tr. at 11-17). Plaintiff thereafter appealed that decision to the Social Security Appeals Council ("Appeals Council") (Tr. at 4).

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review of the ALJ's decision on September 9, 2005 (Tr. at 4-6). On November 15, 2005, Plaintiff filed this action.

## DISCUSSION

### I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits, and this section has been made applicable to SSI cases by 42 U.S.C. § 1383(c)(3). Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See, Monqeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a

benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating Plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief, judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

**II. The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.**

In finding that Plaintiff was not disabled within the meaning of the Social Security Act, the ALJ adhered to the Social Security Administration's five-step sequential evaluation analysis for evaluating applications for SSI. See 20 C.F.R. § 404.1520 and

416.920.³ Under step one of that process, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date (Tr. at 12).

At steps two and three of the analysis, the ALJ found that Plaintiff had an affective disorder, an anxiety disorder, a post-traumatic stress disorder, a personality disorder, a social phobia disorder and dull normal intellectual functioning (Tr. at 15). He found these impairments to be severe within the meaning of the Regulations, but not severe enough to meet or equal, either singly or in combination, any of the impairments listed in Appendix 1, Subpart P of Regulations No. 4., Listings 12.04 (Affective Disorders) or Listings 12.06 (Anxiety Related Disorders) (Tr. at 12-13).

At steps four and five of the five-step evaluation process, the ALJ concluded that during the claimed period of disability, the Plaintiff retained the residual functional capacity to perform work at all exertional levels (Tr. at 13-16). However, the ALJ found that the Plaintiff had non-exertional limitations that required that her work be limited to jobs that do not entail more than simple, routine job tasks and instructions (Tr. at 15). The

---

³ Pursuant to the five-step analysis set forth in the regulations, the ALJ, when necessary will: (1) consider whether the claimant is currently engaged in substantial gainful activity; (2) consider whether the claimant has any severe impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities; (3) determine, based solely on medical evidence, whether the claimant has any impairment or impairments listed in Appendix 1 of the Social Security Regulations; (4) determine whether or not the claimant maintains the residual functional capacity to perform his past work; and (5) determine whether the claimant can perform other work. See id.

ALJ then determined that the Plaintiff had no past relevant work within the scope recognized by The Act (Tr. at 15).

The ALJ then turned to step five where it becomes the commissioner's burden to establish that there are other jobs existing in significant numbers in the national economy that the claimant can perform (Tr. at 15). Based on the Plaintiff's residual functional capacity as established by the ALJ under step four, the ALJ found that the Plaintiff was capable of performing a full range of unskilled work under SSR 85-15 (Tr. at 15). Accordingly, the ALJ found that there was work available to the Plaintiff which existed in significant numbers in the national economy under the framework of Medical-Vocational Rule 204.00(s) (Tr. at 15-16). Accordingly, the ALJ found that the Plaintiff was not disabled within the meaning of The Act, and thus ineligible for SSI (Tr. at 15-16).

The Plaintiff contends that the evidence in the record supports a finding of disability for the period from April, 2000 through the present. The Plaintiff claims that her mental impairments were of such severity that she was unable to perform any work that exists in the national economy. However, the ALJ found that the Plaintiff's residual functional capacity was sufficient to allow her to perform work at all exertional ranges with minor non-exertional limitations. The ALJ's conclusion that the Plaintiff retained a functional capacity inconsistent with a

finding of disability is based on substantial evidence in the record.

    A.    <u>The ALJ's decision is supported by substantial evidence in the record.</u>

A plaintiff claiming disability has "a continuing burden of showing, by means of 'medically acceptable clinical and laboratory diagnostic techniques'" that her physical and mental impairments are of such severity that she is unable to perform *any* substantial gainful activity. <u>Matthews v. Eldridge</u>, 424 U.S. 319, 336 (1976). It is not enough for a plaintiff to show that she is unable to perform work she has done in the past, but she must also show that she is unable to perform "any other kind of substantial gainful work which exists in the national economy." <u>Id.</u> In this case, the Plaintiff did not meet this burden. Based on the evidence in the record, the ALJ correctly found that the plaintiff did not meet her burden for the claimed period of disability beginning in April, 2000.

In making his finding, the ALJ considered the Plaintiff's medical evidence contained in the record (Tr. at 12-17). Despite the Plaintiff's contention that the medical evidence in the record establishes her disability, it is clear that the Plaintiff retains a strong range of functionality with only relatively minor nonexertional limitations. Dr. Robert Hill performed a psychiatric examination of the Plaintiff in June, 2003, and he made the observation that despite some depression and anxiety

difficulties "[h]er symptoms were not so intense that she was unable to follow and understand simple directions and instructions (Tr. at 117)." He found that she "seems capable of performing simple rote tasks, maintaining attention and concentration, [and] learning new tasks in keeping with her ability (Tr. at 117)." He also found that she would function best in a low-stress work environment where there is limited social interaction (Tr. at 117).

Dr. Sadiqur Rahman performed a Mental Residual Functional Capacity Assessment on the plaintiff in June of 2003 (Tr. at 134-37). He found no significant limitation in her ability to understand, remember and carry out very short and simple instructions, carry on a normal routine, work in coordination with others, make simple work-related decisions and respond appropriately to normal changes in the work setting (Tr. at 134). Nor did he find that she had any significant limitation in her ability to accept instruction from and respond appropriately to supervisors or in her ability to get along with co-workers (Tr. at 135). She showed only moderate limitation in the ability to keep a schedule and complete a normal workweek (Tr. at 134-35). In the same examination he found her to have only mild restriction in the activities of daily living (Tr. at 130).

Dr. P. DelRegno, one of the Plaintiff's treating sources, performed an evaluation of the Plaintiff's ability to do work-

related activities based on her mental impairments in October 2004 (Tr. at 160). She rated as "fair" the Plaintiff's abilities to remember work-like procedures, remember short, simple instructions, respond appropriately to supervisors and get along with co-workers (Tr. at 160-70). She also rated as "good" the Plaintiff's abilities to respond appropriately to normal workplace changes, carry out short simple instructions, perform at a consistent pace and make simple work related decisions (Tr. at 160-70).

Dr. Thomas Dickinson examined the Plaintiff in February 2005 (Tr. at 162-72). He found that the Plaintiff could "follow and understand simple job directions and perform tasks of repetitious type with mild supervision (Tr. at 168)." He also noted that she had no limitation in understanding, remembering and carrying out simple instructions (Tr. at 170). He found that she had only slight limitation in making simple work related decisions or interacting properly with supervisors (Tr. at 170-71). He did find moderate limitation in the Plaintiff's ability to interact with co-workers and respond appropriately to change in the work setting (Tr. at 171).

Each of these medical sources found that the Plaintiff would have difficulty with stressful situations, understanding detailed instructions or carrying out detailed, complex tasks (Tr. at 118, 134, 160, 168, 170).

The evidence reviewed here and in the rest of the record reveals that the plaintiff was capable of meeting the requirements of unskilled labor despite her non-exertional limitations. As the ALJ found, there is no evidence to suggest that the Plaintiff has any exertional impairments that would restrict her from performing the full exertional range of work. Furthermore, the evidence from the Plaintiff's treating and consultative medical sources indicates that the Plaintiff's only limitation due to her nonexertional impairments is that she be restricted to jobs where she is only given simple instructions and tasks. The court does not dispute the pain and difficulty that the Plaintiff has experienced because of her impairments. However, there is substantial medical evidence in the record to support the ALJ's finding that the Plaintiff's impairments do not rise to the level of disabling her within the meaning of the Act.

The plaintiff's own testimony regarding her activities of daily living also supports the ALJ's decision. She cooks, does dishes, does laundry, takes public transportation, takes care of her children, travels to see family, reads, works as a home health aide, takes walks, shops, works/plays on the computer, watches TV, cares for pets, manages her own money etc. (Tr. at 29-34, 76-85) Such activities are consistent with the ALJ's finding that the Plaintiff can do the full range of exertional work with some non-exertional limitations. The Plaintiff's own admission of such

activity is inconsistent with a finding of disability, and supports the ALJ's decision.

This evidence, when viewed in light of the total record, supports the ALJ's decision. The ALJ's finding that the Plaintiff was capable of performing work at all exertional levels but was "limited to jobs that do not entail more than simple, routine job tasks and instructions" accurately reflects the weight of the medical and testimonial evidence in the record. While it is clear that the Plaintiff does have nonexertional impairments, it is equally clear that her impairments are not sufficiently severe so as to preclude her from performing a full exertional range of unskilled work. The ALJ's analysis was proper, and his decision is supported by substantial evidence in the record.

The ALJ's assessment that the Plaintiff remained functionally capable of performing the full exertional range of work, with minor non-exertional limitation is accurately supported by substantial evidence in the record.

B. The ALJ's analysis under step five of the disability determination process was proper.

The Plaintiff argues that the ALJ improperly relied upon the Medical Vocational Rules in making his analysis under step five of the disability analysis. The Plaintiff claims that her nonexertional impairments were of such significant severity, that the ALJ was required to obtain the testimony of a vocational expert in order to accurately make his determination under the

requirements of The Act.  However, substantial evidence in the record establishes that the ALJ's analysis under step five was proper, and that his ultimate decision was correct.

The ALJ's decision under step five was based on direct application of Medical-Vocational Rules and SSR 85-15.  The Second Circuit has held that when a claimant's nonexertional limitations significantly diminish the range of exertional work she is capable of, then reliance on the Medical-Vocational Guidelines is insufficient. Bapp v. Bowen, 802 F.2d 601, 605-606 (2d. Cir. 1987).  When a claimant has such significant nonexertional limitations, the ALJ should require Social Security to present the testimony of a vocational expert ("VE") or other similar evidence so that he may determine whether there is sufficient work in the national economy for which the claimant would be eligible. Bapp, 802 F.2d at 605-606.

Social Security Ruling 85-15 clarifies the standard for judging the significance of mental impairments.  SSR 85-15 provides that if a claimant's only limitations are nonexertional mental impairments, the disability analysis consists of whether or not the claimant is capable of performing unskilled work.  A person is capable of performing unskilled work when they are able "(on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in

a routine work setting." SSR 85-15 at *4.  The ALJ properly relied on and applied this Ruling in making his decision.

The ALJ found that the Plaintiff was capable of performing jobs at all exertional levels.  However, due to the Plaintiff's nonexertional limitations, the ALJ found that the Plaintiff was limited to performing "jobs that do not entail more than simple, routine job tasks and instructions" (Tr. at 15).  As already discussed, this finding was based on substantial evidence in the record.

The ALJ was then required to establish whether these nonexertional limitations were "significant" within the meaning of the Act, thus making the Medical Vocational Rules inconclusive under the step five analysis.  The ALJ evaluated the plaintiff's limitations and found that her limitations did not rise to the level of causing significant losses in her ability to do unskilled work.  He found that the Plaintiff's impairments only limited her to jobs which entailed performing simple, routine tasks and instructions.  Therefore, she was capable of performing unskilled work under the provision of SSR 85-15.  Because the Plaintiff's nonexertional limitations did not "significantly diminish" her occupational base, the ALJ was alleviated from any requirement to seek further evidence or testimony as to the sufficiency of the Plaintiff's occupational base under Bapp, supra.

Because the Plaintiff's nonexertional limitations were not significant within the meaning of The Act, the ALJ was entitled to make his determination under step five of the disability evaluation based on the Medical Vocational Rules.  The ALJ was not required to seek the testimony of a VE or other similar evidence in order to determine whether the Plaintiff had a sufficient residual occupational base due to her nonexertional limitations. As such, the ALJ's analysis was proper, and his decision was based on substantial evidence in the record.

## CONCLUSION

For the reasons set forth above, I conclude that the ALJ's decision was supported by substantial evidence in the record and, therefore, grant Commissioner's motion for judgment on the pleadings. Plaintiff's motion for judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____

MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         January 29, 2008